UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PERMANENT GENERAL ASSURANCE
CORPORATION,

      Plaintiff,

v.                                                                      Case No.:  8:09-cv-1414-T-24-TBM

DENISE VALENTIN, MICHAEL GALLIGAN,
BRYANT MARTINS, AND FLORIDA
HEALTH SCIENCES CENTER, INC., d/b/a
Tampa General Hospital,

      Defendants.

_____/

## O R D E R

This cause comes before the Court on the parties' cross motions for summary judgment.

(Dkts. 29, 30, 31, 32, 33, 34, 35, 36, 37, 38 .)  This is an action to determine whether automobile

liability insurance coverage existed under a policy issued by Plaintiff Permanent General

Assurance Corporation ("PGAC") to Defendant Denise Valentin to cover claims arising from an

automobile accident that occurred on September 18, 2008.  The accident allegedly caused

injuries to Defendant Michael Galligan, who has sued Valentin and the driver of her vehicle,

Defendant Bryant Martins, for damages.

**I.     Facts**

The undisputed facts are as follows:

**A.     Formation and Maintenance of the Policy**

Valentin called PGAC from a telephone number on a PGAC television advertisement to

apply for an insurance policy.  Valentin completed the policy application and paid the requisite

down payment to PGAC.  PGAC issued a policy of insurance to Valentin, Policy Number

FL9143855, with an effective period from February 27, 2008 through February 27, 2009.  The

policy provided coverage for property damage and bodily injury liability.

Valentin selected a payment plan consisting of a down payment and eleven even monthly

payments for the full premium for the policy.  Valentin's monthly premium payments were due

on the 27th day of each succeeding month during the policy period.  All payments for the policy,

including the down payment were made directly to PGAC.

For purposes of forming the policy with PGAC, Valentin contacted Delia Arellano, an

employee of General Auto Insurance Services ("GAIS").  GAIS is a wholly owned subsidiary of

PGAC that writes policies only for PGAC.  Arellano is not an independent agent and only writes

policies for PGAC.  Any notices, including cancellation notices, generated for the policy at issue

in this case were electronically tagged for Arellano and then electronically delivered to the

internal agent database for Arellano to access.

### B.    Policy Cancellation

On August 18, 2008, PGAC sent, and Valentin received, a payment voucher for her

premium due August 27, 2008.  When PGAC did not receive payment from Valentin, PGAC

sent her a notice of cancellation, on August 29, 2008.  The August 29, 2008 notice of

cancellation was sent by a valid U.S. Postal Proof of Mailing that was generated by PGAC.

Valentin received that notice, and understood that if she did not pay the premium by September

12, 2008, her policy would be cancelled.  Valentin did not pay the premium, and the policy

canceled September 12, 2008 at 12:01 a.m.

### C.    The Accident

On September 18, 2008, Defendant Martins was involved in an automobile accident with Galligan in Tampa, Florida, which caused personal injuries to Galligan and further caused him to incur medical bills for treatment from Defendant Florida Health Sciences Center, Inc., d/b/a Tampa General Hospital ("the hospital"), in excess of $170,000.00.  PGAC declined coverage to Valentin and Martins for the accident.  Galligan later sued Valentin and Martins in state court for damages as a result of the accident.

### D.      The Lawsuit

In July 2009, PGAC initiated this suit against its insured, Denise Valentin, against the driver of the automobile that allegedly caused the accident, Bryant Martins, against Michael Galligan, the injured party, and against Florida Health Sciences Center, Inc., the hospital that provided medical services to Galligan after the accident.  PGAC seeks a declaration that its cancellation of the insurance policy was effective September 12, 2008, and that as a result of the cancellation, no coverage existed for Valentin or Martins for the September 18, 2008 accident.  PGAC also seeks a declaration that it does not have a duty to defend or indemnify Valentin or Martins for any claims brought by Galligan, or by the hospital, for injuries or losses sustained as a result of the September 18, 2008 accident.

Defendant Galligan filed a counterclaim against PGAC in which he seeks a declaration that Valentin procured an insurance policy from PGAC that became effective February 27, 2008, and that the policy was in effect at the time of the September 18, 2008 accident.

## II.      Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

3

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The Court

must draw all inferences from the evidence in the light most favorable to the non-movant and

resolve all reasonable doubts in that party's favor.  *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir.

2006).  The moving party bears the initial burden of showing the Court, by reference to materials

on file, that there are no genuine issues of material fact that should be decided at trial.  *Id.*

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party

who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial."  *Johnson v. Bd. of

Regents*, 263 F.3d 1234, 1243 (11th Cir. 2001) (quotations and citation omitted).

When a moving party has discharged its burden, the non-moving party must then go

beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories,

and admissions on file, designate specific facts showing there is a genuine issue for trial.  *Porter*,

461 F.3d at 1320.  In determining whether there is a "genuine" issue, the inquiry is "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## III.    Discussion

PGAC maintains that the September 18, 2008 accident did not occur within the effective

dates of the insurance policy at issue because the policy was cancelled by PGAC after Valentin

failed to pay the premiums owed for coverage.  According to PGAC, that cancellation was

effective 12:01 a.m., September 12, 2008.  Galligan, however, contends that PGAC's

cancellation was not effective because PGAC failed to mail or deliver a copy of the notice of

cancellation to Arellano, the GAIS employee who acted as an internal agent for the policy.

The cancellation of automobile insurance contracts is governed by both the Florida Statutes and the relevant policy language of the insurance contract at issue. Florida Statute Section 627.728 provides certain limited reasons for insurers to cancel automobile insurance contracts, including specifically, for nonpayment of premiums. The statute delineates the required method for cancellation and notice of cancellation:

> (2)  No notice of cancellation of a policy shall be effective unless it is based on one or more of the following grounds:
> (a)  Non-payment of premium. . . .
> (3)(a)  No notice of cancellation of policy to which this section applies shall be effective unless mailed or delivered by the insurer to the named insured and to the named insured's insurance agent at least 45 days prior to the effective date of cancellation, except that, when cancellation is for nonpayment of premium, at least 10 days' notice of cancellation accompanied by the reason therefor shall be given. No notice of cancellation of a policy to which this section applies shall be effective unless the reason or reasons for cancellation accompany the notice of cancellation. . . .
> (5)  United States postal proof of mailing or certified or registered mailing of notice of cancellation, or intention not to renew, or of reasons for cancellation, or of the intention of the insurer under the same ownership or management, to the named insured at the address shown in the policy shall be sufficient proof of notice.

Fla. Stat. § 627.728. Florida law is clear that these statutory provisions concerning cancellation must be strictly adhered to, or the purported cancellation is ineffective. *Martin v. Ritcheson*, 306 So. 2d 582, 586 (Fla. 1st DCA 1975).

The policy at issue includes language that tracks the statute. The policy provides the following regarding cancellation by PGAC and the method of providing notice to the insured:

> Section 1 – Definitions and General Provisions
> . . .
> Cancellation and Non-renewal.

. . .

B. How "We" Can Cancel This Policy.
  1. "We" may cancel by mailing written notice of cancellation to "you" and "your" agent at the address shown on the declarations page. "We" will give "you":
   a. Not less than 10 days notice in the case of non-payment of premium. . . .
  2. The notice will give "our" reasons for cancellation.

. . .

E. Reasons For Cancellation or Non-Renewal.

. . .

  2. If the policy has been in effect 60 days or more, or if it is a renewal or continuation policy, or if we decide not to renew this policy, then we may cancel or not renew the policy for one or more of the following reasons:
   a. For nonpayment of premium; . . .

H. Other Termination Provisions.
  1. "We" may deliver any notice instead of mailing it. Proof of mailing of any notice is sufficient proof of notice to "you."
  2. No later than 10 business days after the cancellation or non-renewal of this policy, "we" will send written or electronic notice of the termination to any loss payee shown on the declarations page. Electronic notice is valid only by prior agreement between "us" and the loss payee.
  3. The cancellation date shown in the notice is the end of the policy period.

In summary, Florida Statute Section 627.728 and the terms of the insurance contract together allow and require: (1) cancellation for non-payment of premiums; (2) ten days notice of cancellation; (3) inclusion of the reasons for cancellation with the notice thereof; and (4) proof of mailing, as sufficient proof of notice.

PGAC contends, and the Court agrees, that the policy was cancelled in accordance with both the statute and the policy terms relating to cancellation. The reason for the cancellation on September 12, 2008 was Valentin's failure to make the premium payment due August 27, 2008. The notice of cancellation, which included the reason for cancellation, was delivered to Valentin and confirmed by proof of mailing from the U.S. Postal Service. Valentin admitted in her

deposition that she received the notice before the cancellation, understood the notice, and acknowledged that the notice contained the reasons for cancellation. The policy, therefore, was cancelled effective September 12, 2008 for non-payment of premium. The policy was no longer effective at the time of the September 18, 2008 accident by virtue of the valid cancellation.

Galligan does not dispute that Valentin received proper notice of cancellation. Instead, Galligan contends that the notice of cancellation was not effective because PGAC failed to mail or deliver a copy of the notice of cancellation to Arellano, the GAIS employee who acted as an internal agent for PGAC. Galligan contends that section 627.728 requires notices of cancellation be delivered to both the insured and the agent, in order to prevent lapses in coverage for lay people who might fail to recognize the import of such notices. Galligan contends that PGAC's uploading of the notice to the policy database did not constitute delivery of the notice to Arellano within the meaning of the statute. Nevertheless, Galligan contends, any ambiguity regarding whether such notice was sufficient should be resolved in favor of providing coverage.

The Court, however, must reject Galligan's theory. The law does not require a direct insurer, such as PGAC, to deliver a notice of cancellation to its own internal agent, when that agent is not an independent agent for the insured. The agent for the policy was GAIS's and PGAC's employee, Arellano. PGAC's corporate representative testified that GAIS is a wholly owned subsidiary of PGAC and that any and all agents, including Arellano, are employees of PGAC. The policy was, therefore, a direct policy with PGAC.

Valentin never had her own independent agent. As she testified in her deposition, she saw an advertisement for PGAC and called PGAC's advertised telephone number. She provided her application information directly to PGAC. She received underwriting notices directly from

PGAC.  She responded to underwriting questions directly to PGAC.  Valentin paid PGAC directly for her premium down payment and other monthly premiums.  Galligan has provided no evidence to indicate that Arellano was anything other than an agent acting for, and on behalf of, PGAC.  *See Essex Ins. Co. v. Zota*, 985 So. 2d 1036, 1046 (Fla. 2008) (distinguishing "agent," as one who "represents an insurer under an exclusive employment agreement by the insurance company," from "broker," who "represents the insured by acting as a middleman between the insured and the insurer, soliciting insurance from the public").

In *Wellman v. GEICO General Insurance Co.*, 931 So. 2d 1046 (Fla. 4th DCA 2006), one Florida court addressed the duties of direct insurers, like PGAC, to provide notice of cancellation to persons other than the insured.  In that case, which is almost indistinguishable from the instant case, the Florida court found that the insured had purchased a direct policy from GEICO, which was evidenced by the fact that the insured had no independent insurance agent, and by the fact that the insured had purchased the policy directly from GEICO over the phone.  *Id.* at 1047.  The court ruled that, by purchasing a direct policy from the insurer, the insured waived his right to have notice of cancellation sent to a non-existent independent insurance agent.  *Id.* at 1048.  The court reasoned that "[a] direct insured gains no benefit by our imposing additional notice obligations on the insurer beyond those exercised" and that, "[i]mposition of a requirement that direct writers could not cancel for . . . non-payment of premium in the absence of an agent for the insured, or our requiring additional notice to the internal agent, serves no purpose under the statutory scheme." *Id.*  Therefore, the court found that GEICO effectively cancelled the insurance policy by providing notice only to the insured who had no independent agent, and affirmed summary judgment in favor of GEICO. *Id.*

Galligan attempts to distinguish *Wellman* on the grounds that, unlike the insured in

*Wellman*, Valentin had an independent agent–Arellano–and therefore, Galligan contends,

PGAC's cancellation was ineffective for failure to provide notice to her.  However, there is

absolutely no evidence that Valentin had an independent agent.  Arellano was an employee of

GAIS, a subsidiary of PGAC, and not an independent agent.  There is simply no record evidence

that demonstrates that the policy was anything other than a direct policy with PGAC, a direct

insurer.  This Court refuses to impose an additional requirement on PGAC to mail a notice of

cancellation to an internal agent at PGAC, or to a non-existent independent agent for Valentin.[1]

## IV.    Conclusion

Accordingly, for the reasons stated, the Court concludes that PGAC's cancellation of the

policy was effective September 12, 2008, and as a result of the cancellation, no coverage existed

for Denise Valentin or Bryant Martins for the accident on September 18, 2008.  Furthermore,

PGAC does not owe a duty to defend or indemnify Valentin or Martins for claims of Michael

Galligan or the Florida Health Sciences Center, Inc. arising from the accident.

Accordingly, PGAC's  Motion for Summary Judgment (Dkt. 30) is **GRANTED**, and

Michael Galligan's Motion for Summary Judgment (Dkt. 31) is **DENIED**.  The Clerk is directed

to enter judgment in favor of Permanent General Assurance Corporation and against Denise

Valentin, Michael Galligan, Bryant Martins, and Florida Health Sciences Center, Inc., d/b/a

Tampa General Hospital, and to close this case.  The pretrial conference scheduled in this case

for September 8, 2010 is hereby **CANCELLED**, and this case is removed from the Court's

---

[1]Having found that PGAC was not required to provide notice of cancellation to its own
internal agent, the Court need not address PGAC's additional argument that the notice of
cancellation delivered electronically to Arellano constituted proper notice under the statute.

October 2010 trial calendar.

**DONE AND ORDERED** at Tampa, Florida, this 27th day of August, 2010.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record